UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| Pictometry International Corp., <br>    a Delaware corporation, | ) <br> ) <br> ) | |
|                   Plaintiff | ) <br> ) | |
| -vs- | ) <br> ) | Civil Action No. CIV-05-942-HE |
| Aerial Cartographics of America, Inc. <br>    a Florida corporation, | ) <br> ) <br> ) | |
| Ofek Aerial Photograph International, <br>    Ltd., a foreign corporation, and | ) <br> ) <br> ) | |
| GreenmanPedersen, Inc., <br>    a New York corporation | ) <br> ) <br> ) | |
|                   Defendants | ) | |

## STIPULATED FINAL JUDGMENT AND ORDER FOR PERMANENT INJUNCTION

**WHEREAS**, in the interest of compromise and cooperation and to avoid the costs associated with future judicial proceedings with respect to the above matter, **Pictometry International Corp.**, a Delaware corporation ("Pictometry"), Greenman Pedersen Inc., a New York corporation ("GPI") and it's wholly-owned subsidiary, Aerial Cartographics of America, Inc., a Florida corporation, also known as MultiVision USA, ACA MVUSA and ACA/MVUSA ("ACA" and jointly and severally with GPI, GPI/ACA ) and Ofek Aerial Photography International, LTD, an Israeli corporation ("Ofek" and together with GPI/ACA, the "Defendant Parties"), have agreed to settlement of this action under the terms of the Settlement Agreement dated April __, 2008 and the Ancillary Settlement Documents (as defined therein) executed pursuant thereto and have further agreed to the entry of this Stipulated Final Judgment and Order for Permanent Injunction ("Stipulated Judgment") by this Court to resolve all matters in dispute between them in this action.

**NOW, THEREFORE**, upon the request of Pictometry and the Defendant Parties (collectively, the "Parties") for Court to enter this Order, the Court hereby:

# FINDINGS OF FACT

**Makes the following findings of fact:**

A.   This Court has subject matter jurisdiction of this action and personal jurisdiction over Pictometry and the Defendant Parties.

B.   Venue is proper as to all Parties in the Western District of Oklahoma.

C.   The Parties waive all rights to seek appellate review or otherwise challenge or contest the validity of this Stipulated Judgment and agree not to attack its validity or any provision hereof in any collateral or subsequent proceeding.

D.   Pictometry's claims are not objectively baseless or brought by Pictometry for the purpose of using them, as opposed to their outcome, in an effort to restrain competition.

E.   The Parties have conducted extensive discovery and a Markman hearing has been held in which the Court has issued an order as to the construction of the claims of U.S. Patent Nos. 5,247,356 (the "Pictometry Patent") which is owned by Pictometry.

F.   The continuation of this action is likely to result in further substantial expenditure of time and resources by the Court and the Parties.

G.   Ofek manufactures, makes, imports to the United States, offers for sale and sells a software product and technology in the United States through its license with GPI/ACA under the MutliVision trade name (such product and the technology and methods and practices used therein being referred to as the "MultiVision Product"), which enables the user to practice a method for obtaining detailed and accurate measurements from the ground which can be determined from orthogonal and oblique aerial photographs;

H.   Ofek and/or GPI/ACA have developed and are using one or more apparatuses and/or devices for the capture and processing of orthogonal and/or oblique photographic images (such apparatuses and/or devices being referred to as "MultiVision Apparatus");

I.   If Pictometry's demand in this action for a permanent injunction restraining Ofek, GPI/ACA from infringing the Pictometry Patent is granted, GPI/ACA would be enjoined from manufacturing, making, using, licensing, selling or offering for sale or license the MultiVision Product and the MultiVision Apparatus. Further, GPI/ACA's customers (which are primarily State and local governments located across the United States) would be prevented from using the MultiVision Product licensed by them from GPI/ACA, resulting in disruption to these customers' businesses. Additionally, GPI/ACA would be virtually

unable to productively use assets which are dedicated to the manufacture, making, use, sale and/or license of the MultiVision Product and the use of the MultiVision Apparatus, and the subject matter of Ofek's license to ACA to license the MultiVision Product to end users and use the MultiVision Apparatus in the United States would be frustrated.

      J.      The Parties propose settlement of all aspects of the action pursuant to the terms of the Settlement Agreement and the Ancillary Settlement Documents, subject to the Court's review, consideration and approval of this Stipulated Judgment.

      K.      Under the Settlement Agreement and the Ancillary Settlement Documents, notwithstanding a permanent injunction imposed on GPI/ACA from manufacturing, making, using, selling or licensing or offering for sale or license the MultiVision Product and the MultiVision Apparatus or any other infringement of the Pictometry Patent, GPI's and ACA's existing customers who have binding contracts for the license and use of the MultiVision Product will be released from specified past claims for infringement of the Pictometry Patent as a result of their past use of the MultiVision Product and offered a choice of continuing to use of the MultiVision Product and to have the same repaired, maintained and updated, free of any infringement claim with respect to the Pictometry Patent pursuant to a patent license being granted by Pictometry, or to change to Pictometry products from the MultiVision Product. As a result, the existing MultiVision customers will avoid disruption to their respective businesses and will not be prejudiced by the terms of the Settlement Agreement or the Ancillary Settlement Documents and will be in a more favorable position than if the Court enjoined GPI/ACA in this action.

      L.      The Settlement Agreement provides for Pictometry's purchase from GPI/ACA of assets which are used to manufacture, make, sell and license the MultiVision Product and use the MultiVision Apparatus. Following the consummation of the transactions contemplated by the Settlement Agreement, including such asset purchase, ACA will continue as a going concern which distributes oblique imagery products for use and sale to consumers provided the products do not infringe the Pictometry Patent. GPI will also continue as a going concern which among other things distributes oblique imagery products for use and sale to consumers provided the products do not infringe the Pictometry Patent. GPI/ACA will also become a Pictometry sales representative.

      M.      The market relevant to the subject matter of this action may reasonably be characterized as one in which there is ongoing research and development of innovations in the field of oblique imagery and associated products. GPI/ACA and Ofek participate in this research and development. Neither the Settlement Agreement nor any of the Ancillary Settlement Documents prohibit GPI/ACA and Ofek from continuing these research and development efforts and retaining, using and offering for sale or license any resulting oblique

imagery technology in competition with Pictometry's product, provided that such technology does not infringe the Pictometry Patent.

N.      Based on the foregoing and since neither the Settlement Agreement nor the Ancillary Settlement Documents, prohibit GPI/ACA from developing, manufacturing, making, offering for sale or licensing products that compete with Pictometry's products so long as they do not infringe the Pictometry Patent or any confidentiality undertakings, competition will not be restricted in the relevant market to any substantially greater degree as a result of the settlement among the parties of this action than if Pictometry ultimately prevails in this action.

O.      There are other U.S. based competitors offering technology which is competitive with Pictometry's products.

P.      Settlement of this action in the manner proposed in the Settlement Agreement and the Ancillary Settlement Documents, including this Stipulated Judgment, is appropriate and in the public interest since the settlement does not have an anti-competitive effect beyond the scope of protection of Pictometry's Patent and disposes of all issues before the Court without further litigation and the attendant substantial expenditure of time and resources by the Court and the parties.

Q.      The Parties have voluntarily entered into the Settlement Agreement and the Ancillary Settlement Documents (all of which are incorporated by reference), subject to this Court's review, consideration and approval of this Stipulated Judgment.

**NOW THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED** as follows:

1.      The Pictometry Patent is valid and enforceable.  The Defendant Parties do not contest the validity and/or enforceability of the Pictometry Patent and agree not to contest the validity and/or enforceability of the Pictometry Patent in the future or directly or indirectly aid, assign or participate in any action contesting the validity or enforceability of the Pictometry Patent.  This includes, until such time as the Pictometry Patent expires, disputing whether the Pictometry Patent is (a) valid and enforceable as to the MultiVision Product or the MultiVision Apparatus or (b) valid and enforceable in any other or future cause of action or litigation involving any of the Defendant Parties, or their respective successors or assigns, including, without limitation, any other or future cause of action or litigation respecting different or future orthogonal or oblique imaging products, technology, methods, practices, apparatuses and/or devices .

2. The MultiVision Product and the MultiVision Apparatus has infringed on the Pictometry Patent as a result of its manufacture, make, use, import, offer for sale or license or sale or license. Ofek as developer and owner of the MultiVision Product and the MultiVision Apparatus has infringed the Pictometry Patent.

3. From and after the date hereof, ACA, including any of its successors, assigns and Affiliates, and any of its officers, agents, servants, employees and those persons in active concert or participation with it who shall have received actual notice of the settlement, are permanently enjoined (a) until such time as the Pictometry Patent expires or is finally determined (without right of appeal) invalid or unenforceable by a court of competent jurisdiction in a matter not involving the Parties, whichever occurs first, and except as expressly permitted in the Patent License Agreement dated April __, 2008, among Pictometry, GPI/ACA and Ofek (the "Pictometry Patent License") during the term thereof, from directly or indirectly, or by way of inducement or contribution, infringing the claims of the Pictometry Patent, and more particularly from manufacturing, making, using, selling, licensing, or offering for sale or license, or importing into the United States the MultiVision Product or the MultiVision Apparatus, and (b) except as permitted in a Sales Representative Agreement dated April __, 2008 among Pictometry and GPI/ACA (the "Sales Representative Agreement") from using the Intelligent Images Mark or any other trademark, service mark or name that is confusingly similar to the Intelligence Images Mark as all or as part of any designation of a product or service, including but not limited to in web sites, computer code or other marketing, advertising, or promotional methods.

4. From and after the date hereof and until the expiration of the Pictometry Patent, or is finally (without right of appeal) determined invalid or unenforceable by a court of competent jurisdiction in a matter not involving the Parties, whichever occurs first, except as expressly provided in the Pictometry Patent License Agreement during the term thereof, GPI, including any of its successors, assigns and Affiliates, and any of its officers, agents, servants, employees and those persons in active concert or participation with it who shall have received actual notice of the settlement, are permanently enjoined, from directly or indirectly, or by way of inducement or contribution, infringing the Pictometry Patent, and more particularly by manufacturing, making, using, selling, licensing, distributing or offering for sale or license, or importing into the United States the MultiVision Product or the MultiVision Apparatus, or permitting or causing ACA to do the same.

5. (a) From and after the date hereof, Ofek, including any of its successors, assigns and Affiliates, and any of its officers, agents, servants, employees and those persons in active concert or participation with it who shall have received actual notice of the settlement, are permanently enjoined from (i) until such time as the Pictometry Patent expires or is finally (without right of appeal) determined invalid or unenforceable by a court of competent jurisdiction in a matter not involving the Parties, whichever occurs first, and

except as provided in the Patent License Agreement during the term thereof, directly or indirectly, or by way of inducement or contribution, infringing the claims of the Pictometry Patent, and more particularly from manufacturing, making, using, selling, licensing, or offering for sale or license in the United States, or exporting into the United States the MultiVision Product or the MultiVision Apparatus, and (ii) any use of the Pictometry Mark or any other similar name or trademark or any other name that is confusingly similar to the Pictometry Mark as all or part of any designation of a product or service, including, but not limited to, in any web site, computer code or other marketing, advertising, or promotional method.

      (b)   (i)   Ofek is ordered not to assert any violation or infringement of any of its Intellectual Property Rights, any breach of contract or tortuous interference with contract or other claims or commence any action, suit or proceeding based thereon against:

      (A)   any customer of either GPI or ACA ("Existing MultiVision Customers") who prior to the Effective Date entered into a written contract (the "Existing MultiVision Customer Contracts") with, GPI or ACA for the sublicense of the MultiVision Product (including any such contract that has not been fully performed or completed by delivery of a site file containing the processed photographs and the installation of the MultiVision Product, (such contracts being collectively referred to as the "Undelivered Contracts" and all other Existing MultiVision Customer Contracts pursuant to which an Existing MultiVision Customer has the right to use the MultiVision Product, being collectively referred to as the "Delivered Contracts", each of which as are listed on Exhibit J to the Settlement Agreement, except for the Existing MultiVision Customer Contracts (the "Restricted Existing MultiVision Customer Contracts") which require the prior approval of the Existing MultiVision Customer subject thereto before disclosure can be made to Pictometry, which permission GPI/ACA shall exercise commercially reasonable efforts to get upon the execution of this Agreement and upon obtaining the same shall provide to Pictometry disclosure and true and copy thereof), and Prospective MultiVision Customers entering contracts with GPI/ACA on or before the Effective Date which shall be deemed Existing MultiVision Customers, and designated as either an Undelivered Contract or a Delivered Contract for using the MultiVision Product to the extent that such Existing MultiVision Customer bound thereby has a right to use the MultiVision Product. Restricted Existing MultiVision Customers and Prospective MultiVision Customers which enter a contract on or before the Effective Date are deemed Existing MultiVision Customers and deemed included on Exhibit J. Contracts with Prospective MultiVision Customers entered on or before the Effective Date are deemed Undelivered Contracts.

(B)     GPI/ACA for manufacturing making, using, licensing or importing the MultiVision Product or using the MultiVision Apparatus solely to the extent that GPI/ACA does so to (1) provide ongoing support to Existing MultiVision Customers pursuant to a contractual obligation to do so under an Existing MultiVision Customer Contract; and (2) fulfills their performance obligations under Undelivered Contracts, which upon the completion of such performance shall become Delivered Contracts.

(C)     Pictometry and its successors and assigns (1) to the extent that it performs services as GPI's or ACA's subcontractor for the purpose fulfilling GPI/ACA performance obligations, or any portion thereof, under the Undelivered Contracts or (2) engages in any of the other transactions contemplated hereby, the Asset Transfer Agreement or any of the Ancillary Settlement Documents.

For the purposes of this Agreement, the following shall apply:

"Existing MultiVision Customer" shall also include the primary contracting party in those instances where GPI/ACA provides the MultiVision Product by means of subcontract and the customers of any such primary contracting party, to the extent GPI and/or ACA is required to indemnify such customers pursuant the Existing MultiVision Customer Contract. Notwithstanding anything herein to the contrary, "Existing MultiVision Customer Contracts", Existing MultiVision Customer Contracts shall only include those contracts in the form existing on the Effective Date hereof, as they may be modified, from time to time, with prior written consent of Ofek and Pictometry, provided such written consent shall not be unreasonably withheld with respect to change orders that relate solely to GPI/ACA's performance of its remaining obligations under the Undelivered Contracts. Without limiting the foregoing, in no event shall such changes to an Undelivered Contract involve any change in the nature of the use or license rights granted thereunder or any renewal, extension or change to the term thereof.

"Intellectual Property Rights" means inventions, patent applications, patents, design rights, copyrights, trademarks, service marks, trade names, domain name rights, mask work rights, know-how, trade secret rights, technology and all other intellectual property rights, derivatives thereof, and forms of protection of a similar nature anywhere in the world.

(ii)     Until the (A) the earlier of the expiration of the Pictometry Patent or the Pictometry Patent is finally (without right of appeal) determined invalid or

unenforceable by a Court of competent jurisdiction in a matter not involving the Parties and (B) no further Existing MultiVision Customer Agreements are in effect, Ofek shall not sell, assign, transfer or license any of its Intellectual Property Rights which are recognized in and enforceable under United States law, treaty or courts and which are embodied in the MultiVision Product, the MultiVision Apparatus or any of the Purchased Assets (as defined in the Asset Transfer Agreement) without first (1) notifying GPI, ACA and Pictometry of such proposed transaction at least 10 days in advance thereof (2) obtaining the written undertaking in favor GPI/ACA, Pictometry and the Existing MultiVision Customers (each whom shall be made express third party beneficiaries thereof with the right in favor of GPI/ACA and Pictometry to approve any future transfers or modifications thereof) for the transferee to abide by the terms of this order, including but not limited to Paragraph 5(b) above and (3) providing a fully executed original thereof to GPI/ACA and Pictometry.

6. (a) Pictometry is hereby ordered to observe and honor the Pictometry Patent License Agreement granting to the Defendant Parties the right, on the terms and conditions therein, to, without infringing the Pictometry Patent, provide ongoing repair, maintenance and update service to Existing MultiVision Customers pursuant to a contractual obligation to do so under an Existing MultiVision Customer Contract or fulfill GPI/ACA's performance obligations under Undelivered Contracts, which upon the completion of such performance shall become Delivered Contracts.

(b) Pictometry is ordered not to assert any claim for violation or infringement of the Pictometry Patent against any Existing MultiVision Customer for using the MultiVision Product after the Effective Date to the extent of its license rights under its Existing MultiVision Customer Contract or commence any action, suit or proceeding against such Existing MultiVision Customer for any such claim.

7. The Defendant Parties' counterclaims set forth in each of their respective Answer and Counterclaims are dismissed with prejudice.

8. By virtue of this Stipulated Judgment, all claims and demands for relief prayed for by Pictometry in this action are deemed to be resolved.

9. In addition to remedies for contempt of this Stipulated Judgment which any of the Parties may have, in the event of material breach or violation by any of the other Parties of the terms of this Stipulated Judgment, the non-breaching Party is entitled to a preliminary and permanent injunction and/or an order of specific performance with respect to material breaches or violations of this Stipulated Judgment or material breaches of any of the Settlement Agreement or any of the Ancillary Settlement Documents upon motion for an Order to Show Cause based upon affidavits stating factual grounds of a likelihood of success

of establishing that such a breach or violation occurred, after notice by regular mail to the last known address of each of the other parties and to their attorneys of record, and after a hearing at which the alleged breaching Party(ies) shall have a reasonable opportunity to present evidence and oral argument.

10. This Stipulated Judgment is entered pursuant to Rule 58 of the Federal Rules of Civil Procedure, and motions pending before the court are hereby withdrawn and this action is hereby dismissed, with prejudice and without costs or attorney fees, save that this District Court shall retain jurisdiction over this action, including without limitation, to enable any party to apply for further orders and directions as are necessary and appropriate for enforcement, compliance, construction or modification of this Stipulated Judgment, the Settlement Agreement and the Ancillary Settlement Documents.

11. This Stipulated Judgment, the Settlement Agreement and the Ancillary Settlement Documents contain the entire agreement between the parties and there have been no other promises, representations, or agreements made between the parties with respect to this subject matter Nothing in this Stipulated Judgment, the Settlement Agreement or the Ancillary Settlement Documents shall give standing to any person not a party to this Consent Decree to seek any relief related to it.

12. The Parties, through their respective counsel, hereby consent to entry of the foregoing Order which shall constitute a final judgment and order in this action and related counterclaims. The Parties further stipulate and agree that the entry of the foregoing Order shall constitute a full, complete and final settlement of this action and related counterclaims. The Parties further stipulate that this Order together with the Settlement Agreement and the Ancillary Settlement Documents embody all of the agreements among them with respect to this subject matter and that they have not relied upon any representations or statements not included herein or therein.

13. Entry of this Stipulated Judgment is in the public interest.

14. Drafts, proposed terms, correspondence or any other information exchanged between and among the Parties, in any form, shall not be admissible in any action or proceeding to enforce this Stipulated Judgment, Settlement Agreement or Ancillary Settlement Document(s).

By: _____
Joseph Titterington
Dunlap, Codding & Rogers, P.C.

1601 Northwest Expressway, Suite 1000
Oklahoma City, Oklahoma 73118
Tel: (405) 607-8600
Fax: (405) 607-8686
Attorney for Plaintiff

| | |
|---|---|
| By: _____ | By: _____ |
| John Kenney | George S. Corbyn |
| McAfee & Taft, P.C. | 211 North Robinson, Suite 1910 |
| 211 North Robinson, 10th Floor | One Leadership Square |
| Two Leadership Square | Oklahoma City, Oklahoma 73102 |
| Oklahoma City, Oklahoma   73102-7103 | Tel: (405) 239-7055 |
| Tel: (405)552-2244 | Fax: (405) 702-4348 |
| Fax: (405)228-7244 | Attorney for Defendant GPI/ACA |
| Attorneys for Defendant Ofek | |

**SO ORDERED, this 7th day of April, 2008.**

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE